JUSTICE WHEAT,
dissenting.
¶20 I dissent from the Court’s decision reversing the District Court’s denial of Harrison’s motion to dismiss the tampering with evidence charge brought against her after she fled the hospital to avoid having *58 her blood drawn pursuant to a lawful warrant. I conclude the factual distinctions in Peplow are significant and render Peplow inapposite authority for the case before us. Additionally, the 2011 legislative changes to the statutes applied in Peplow and applicable to the case at bar require a new analysis and application to the facts currently before us.
¶21 As noted by the majority, Peplow, after crashing his vehicle, left the scene of the accident before officers arrived. As Peplow walked along the road and away from the accident scene, a passing couple asked if he needed assistance but he declined. The couple called 9-1-1 and reported the accident and their suspicion that Peplow was intoxicated. Peplow went home, consumed alcohol, left home, went to a tavern, and consumed more alcohol. It was at the tavern that Montana Highway Patrol Officer Tom Hamilton, the officer dispatched to investigate the accident, located Peplow approximately 1 to 1.5 hours after the accident. Hamilton conducted a Horizontal Gaze Nystagmus (HGN) test which indicated Peplow was highly impaired. Subsequent detention center tests indicated that Peplow was intoxicated with a .202 blood alcohol level.
¶22 Unlike the facts in Peplow, Harrison was pulled over for driving at night with no headlights. The officer, after observing signs of intoxication, conducted field sobriety tests that indicated that Harrison was intoxicated. Of the eighteen indicators measured in field sobriety tests, Harrison displayed fifteen indicators of impairment. After she refused to provide a preliminary breath test, she was arrested. She subsequently withdrew her implied consent to provide a blood sample. Based upon Harrison’s extensive DUI history, the arresting officer obtained a telephonic warrant to collect a blood sample from Harrison pursuant to § 61-8-402(5), MCA, and transported her to the hospital for the blood draw procedure. While the officer was completing the necessary paperwork, Harrison fled the hospital and hid until the following day at which time blood test results were no longer relevant to her charge of DUI.
¶23 A significant and critical factual distinction between Peplow and the case before us is that when Peplow went home after the accident and drank three double shots of whiskey, went to the tavern and began drinking a beer, he was not under lawful arrest, in custody, or subject to a warrant obtained in accordance with statutory requirements. No officer had observed Peplow or performed field sobriety tests to determine whether he was impaired or intoxicated at the time of the accident. Moreover, there was no judicial determination—through application for and acquisition of a warrant—that evidence of *59 impairment existed prior to Peplow altering his blood alcohol content by consuming alcohol after the accident. Consequently, our ruling that consuming alcohol after a vehicle accident did not constitute tampering with physical evidence was the correct ruling in Peplow. That narrow ruling, however, does not apply to this case.
¶24 The Peplow Court was constrained in its interpretation and application of certain relevant statutes by both the facts in Peplow as well as the language of the statutes as they existed at that time. I acknowledge that the tampering with evidence statute applied in Peplow, § 45-7-207, MCA, with the exception of two minor word changes in 2009, is identical to the statute applied in this case. When the Peplow Court analyzed the tampering statute, it noted that the words “physical evidence” were not defined in the criminal code. Consequently, it turned to the general definition of “evidence” set forth in the Montana Rules of Evidence, and while the definition of “evidence” contained “things presented to the senses,” the Peplow Court concluded that blood alcohol content (BAC) within the body did not constitute such a “thing.” Peplow, ¶ 22.
¶25 Subsequent to Peplow, the Montana Legislature revised parts of the criminal code and the motor vehicle statutes, including § 61-8-402, MCA, and § 46-5-224, MCA. At the time Peplow was decided, § 61-8-402, MCA, the “implied consent” statute in the Motor Vehicles title of the Montana statutes, did not include a section authorizing law enforcement officers to apply for a search warrant to collect a blood sample if the arrested person refused to agree to a blood draw. In 2011, the Legislature added subsection (5) which provides in relevant part, “If the arrested person has refused to provide a ... blood ... sample under 61-8-409 ... the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person’s blood for testing.” Section 61-8-402(5), MCA.
¶26 A search warrant requires a neutral third party—a judge or magistrate—to assess the evidence presented by law enforcement to determine the existence of probable cause. In this case, the arresting officer obtained a telephonic warrant after a judge determined probable cause existed and that a blood test was relevant evidence and warranted based upon the results of Harrison’s field sobriety tests and the officer’s observations. At the time the warrant was issued, Harrison became obligated to allow a blood draw. As noted by the Arizona Court of Appeals in State v. Clary, 2 P.3d 1255, ¶ 16 (Ariz. 2000), “A search warrant is a court order that authorizes police to intrude into an individual’s privacy.” In Clary, the court described BAC *60 evidence as “critical and often dispositive in DUI cases,” and concluded that a warrant for a blood draw in a DUI case could be executed through the use of reasonable force if necessary. Clary, ¶¶ 19 and 28 n. 5. Decisions such as Clary illustrate the significance of the power of the search warrant.
¶27 Also in 2011, the Legislature amended § 46-5-224, MCA. Prior to that amendment § 46-5-224, MCA, provided that “A warrant may be issued under this section to search for and seize any: (1) evidence; (2) contraband, or (3) person for whose arrest there is probable cause, for whom there has been a warrant of arrest issued, or who is unlawfully restrained.” After 2011, § 46-5-224(1), MCA, provides: “evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person’s body when subjected to testing.” With this revision, the Legislature declared that “evidence” seizable by search warrant included a blood sample drawn to ascertain a person’s BAC.
¶28 I conclude that these legislative revisions state that a blood sample is “evidence” that may be specified in a search warrant; consequently, such blood evidence is “physical evidence” and a “thing” that may not be tampered with. This interpretation comports with our rule of statutory construction that “specific provisions prevail over general provisions.” State v. Plouffe, 2014 MT 183, ¶ 27, 375 Mont. 429, 329 P.3d 1255. In other words, relying on the revised specific provisions in the criminal procedure and DUI statutes is more appropriate than relying on the general evidence statutes as was required in Peplow.
¶29 I therefore conclude that under the facts in this case, Harrison’s blood alcohol content within her body became evidence upon her arrest and the issuance of the search warrant. It also became a “thing” with which she was not allowed to tamper. This is not a novel conclusion. See, e.g., Botka v. Sec’y, Dep’t of Corr., 2012 U.S. Dist. LEXIS 139062, 2012 WL 4466489 (Fla.), in which the U.S. District Court for the Middle District of Florida, Orlando Division, applying a statute almost identical to our tampering statute, found that a “person’s blood alcohol level does constitute a ‘thing’ for purposes of the Tampering with Evidence statues [sic].”
¶30 I agree with the majority that in cases involving an escapee or other offender who impedes lawful investigations, law enforcement may charge him or her with escape and/or obstructing a peace officer, in addition to the original underlying charge or charges. However, for the reasons set forth in this Dissent, I believe under circumstances such as those presented in this case, our statutes support being able to *61 charge the offender with tampering with physical evidence as well.
¶31 For these reasons, I would affirm the District Court’s denial of Harrison’s motion to dismiss the evidence tampering charge. I respectfully dissent from the majority’s failure to do so.
CHIEF JUSTICE McGRATH and JUSTICE McKINNON join the Dissent of JUSTICE WHEAT.